Peoples National Bank *v.* Eagleson, Appellant.

Argued October 6, 1931.   Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner, Wiley & Wiley,* for appellant.

*A. R. Witherspoon* and *W. R. Murphy,* of *McIlvain, Murphy & Mohn,* for appellee, were not heard.

PER CURIAM, November 23, 1931:

This action in assumpsit was, by agreement, tried by the court below without a jury, under the Act of 1874,

P. L. 109. Judgment was awarded in favor of plaintiff and defendant appeals.

Omitting details not necessary to be recited in connection with the appeal, the facts are as follows: Plaintiff bank, in the usual course of its business, loaned Hiram C. Horner, a depositor and client, on demand notes, various sums which, at the time of his death on November 16, 1925, aggregated $13,800. Horner died insolvent. Upon settlement of his estate by the orphans' court, plaintiff received in distribution $1,349.38. During the years these loans were made to Horner by the bank, defendant was its president, a member of the board of directors and its solicitor. Plaintiff claimed all loans in question were made on the recommendation of its solicitor, the defendant, and the loss sustained was due to his breach of contract and professional duty as solicitor. The amount claimed in this action covered both the loss shown by the settlement of the estate and other items of loss previously sustained. The court below found that neither "the minutes nor the by-laws of the bank defined the duties of the solicitor, and what these were must be deduced from the implications arising out of the name and title of the office, and from the practice and course of business of the bank"; that "it was the practice of the board of directors at times to refer loans to the solicitor for report thereon or for his approval in the character of solicitor" but "none of the loans made to Horner were so referred and there is no evidence that defendant was ever asked to or did as solicitor make an official report concerning any of them in connection with the matter of their approval," and it did not "appear that by the by-laws or the practice of the bank there had been imposed upon the solicitor the duty of performing any functions in connection with the making or approval of loans, in the absence of a reference of them to him or a request for a report or his official opinion thereon"; and though the court found that, as a member of the board of directors, defendant had recom-

mended all or nearly all of the loans made to Horner, he had not done this in his capacity of solicitor.

As to the loss on two of the loans, however, the court below held defendant's failure in his duty to the bank, as its solicitor rendered him responsible. On December 3, 1923, Hiram C. Horner borrowed from plaintiff bank, on his personal note, the sum of $2,000, on the understanding that the money was to be used in paying for a farm, known as the Ulery Farm, purchased by the borrower at $12,000. This property stood in Hiram C. Horner's name until April, 1925, when it was transferred to Mrs. Horner, who alleged the farm was purchased on her behalf, and that $6,000 of the purchase price (the balance being a purchase-money mortgage) was money furnished by her. She testified she gave her husband $2,000 in cash, the source of which she gave, and her note for $4,000, to be applied to buying the farm, and that he subsequently reported he had put this latter sum into the property for her. Following his death the note was found in Horner's safe deposit box (he, apparently, having used his own funds in making payment on the farm); it was inventoried as an asset of his estate, and Mrs. Horner paid the amount, with interest, to the estate, comprising the only fund for distribution.

The court below finds defendant not only knew at the time the bank made the loan, or before its final consummation, that the farm in question was purchased on Mrs. Horner's account, but, at the time the transfer to her was made in 1925, the proceedings took place in his office and with his knowledge and advice; yet he failed to inform the bank of the transaction, allowing it to proceed with the $2,000 loan and to continue to carry it on the assumption that Horner himself owned the property for the purchase of which he borrowed the money, and also to loan him $225 at a later date, without divulging his knowledge. The court held "that the withholding by the defendant from the bank of the knowledge which

he had, and which, if communicated, would have prevented its being fraudulently led into making or consummating these loans, was a breach of the defendant's duty as general solicitor," and entered a judgment against defendant for damages in the sum of $2,225.

Defendant appeals from this judgment solely on the ground that plaintiff bank accepted without protest its share in the distribution of the Horner Estate, consisting of a fund derived from a fraudulent transaction of the borrower, of which plaintiff was complaining, and, by so participating, ratified the transaction as a whole and consequently is estopped from making its claim against appellant.

As the court below points out, the questions before it for decision did not go to the fraudulent representations of the bank's debtor (which are not disputed), but to the dereliction of the bank's solicitor, the defendant, who, with knowledge of a fraud being practiced on the bank, his client, failed to disclose it. The court was not asked to and did not make a finding of fraud in connection with either the $4,000 given Horner by his wife, or the purchase of the property for and transfer to her. The argument of estoppel which defendant uses might be valid if the suit were against the Horner Estate and Mrs. Horner for this loss, but we agree with the court below that appellant is without standing entitling him to consideration on such ground.

Other questions raised in appellant's brief are not discussed because not stated by appellant as involved on this appeal.

The judgment of the court below is affirmed.